# JOHNSON v. REDWINE.

1. Section 2841 of the Civil Code (Code 1882, § 2016 a), which declares that there can be no valid allowance of cash as an exemption unless the order of the ordinary provides for its investment in personal property, is not applicable in a case where the property exempted was an interest owned and held by the debtor in a judgment. Such an interest is not cash, and if after the same has been duly set apart its proceeds are invested in land, the same becomes exempt, just as other property purchased with the proceeds of a homestead or its income.

2. One who takes a mortgage upon land purchased with the proceeds of exempted property, and who knows or is chargeable with notice that such was the fact, acquires his lien subject to the exemption right.

3. A homestead set apart under the constitution of 1868, which was not

of as much value as the homestead allowed by the constitution of 1877, could, after the adoption of the latter constitution, be supplemented and increased to an amount not exceeding that provided for by the last constitution.

Argued December 10, 1897. — Decided April 13, 1898.

Levy and claim.   Before Judge Lumpkin.   Fulton superior court.   March term, 1897.

*Mord. Foote Jr.,* for plaintiff in error.

*Arnold & Arnold* and *W. J. Speairs,* contra.

Fish, J.   Upon George A. Johnson's petition, in behalf of his wife and minor children, to have certain homestead exemptions, which had been previously granted, supplemented by adding thereto his interest in the judgment designated below, the ordinary of Fulton county, on May 31, 1879, granted the following order:   " Ordered, that the homestead heretofore granted and supplemented be supplemented by the addition of two thirds of a judgment in favor of said George A. Johnson versus Shropshire & Co., rendered in Fulton superior court, April 23, 1878, principal $424.00, and $—— interest, and, after paying the cost of this proceeding and for recording the same, that the balance of the money be invested in real estate as a homestead for the family of the applicant, and it is further ordered that . . be and he is hereby appointed to make said investment in accordance with the law, and that said investment when so made shall take the place of the interest of said Johnson in said judgment, and shall constitute his homestead and exemption to the extent that the same applies."   In accordance with the direction in this order, the proceeds of Johnson's interest in this judgment were subsequently invested in land, the vendor of which made a warranty-deed to Johnson's wife and children, in which, just after the description of the premises conveyed, was the following language:   " The purchase-money being homestead money, and the same invested in the above-described property, under and by an order of the court of ordinary of said county, as the homestead of the said Mrs. Jane E. Johnson and her minor children above named, and such as may hereafter be born to George A. and the said Jane E. Johnson, his wife, in pursuance of the homestead laws of said State."   In 1894 one

of these children, who had become of age, and the surviving husband and sole heir of another, who had died after attaining her majority, brought suits against Johnson for the interests which they respectively claimed in the land, alleging that the recital in the deed in reference to the investment of homestead money therein was untrue. These suits were settled by Johnson's giving to each of the plaintiffs a note for one hundred dollars, secured by mortgage upon the land, and each of them giving him a quitclaim deed. There was no reference in the notes or mortgage to any homestead or homestead funds. The notes and mortgage were transferred until they became the property of Redwine. The notes not being paid at maturity, Redwine brought suits upon them, obtained judgments, and had the fi. fas. which were issued thereon levied upon a lot in the city of Atlanta, which was a part of the land in which the proceeds of Johnson's interest in the judgment against Shropshire & Co. were invested. To these levies Johnson as the head of a family interposed claims. The claim cases thus made were, by agreement, consolidated and tried together by the judge of the court below, without the intervention of a jury, the agreement stipulating that the judge " should render such judgment as, legal or equitable, might seem proper under the facts; the issue in the claim cases being taken substantially as covering equitable issues." The court adjudged that the sheriff should sell the property under the executions, " and out of the proceeds there be paid to G. A. Johnson, as head of a family, and as being the homestead money set forth by order of the ordinary in 1879, the sum of $275.00 without interest; and . . that the balance of said fund be applied to the amount of the two fi. fas." of the plaintiff. To this judgment the claimant excepted.

1. The judge was clearly right in holding that a valid exemption was created in Johnson's interest in the Shropshire & Co. judgment. Under the homestead provisions of the present constitution and the statutes passed in pursuance thereof, a homestead may be taken, or may be supplemented, so as to bring the amount exempted up to the limit allowed by the constitution, in property of any kind whatever; and except it may be in a single instance, the identical property in which the exemption

is sought may be set apart. The one possible exception to
which we refer is where the property sought to be exempted con-
sists of cash. Section 2841 of the Civil Code, which contains.
the provisions of the first section of the act of October 28, 1870,
which was passed in pursuance of the homestead and exemption
provisions of the constitution of 1868, provides, that, "When
any person applies for exemption of personalty, and said person-
alty sought to be exempted consists wholly or in part of cash, be-
fore the same shall be allowed finally, it shall, under the direc-
tion of the ordinary, be invested in such articles of personal
property as the applicant may desire, and when so invested and
returned by schedule, with or without other property, as the law
requires, shall constitute the exemption of personalty, and in no-
case shall the allowance of cash without such investment be a
valid exception." Whether this portion of the act of 1870 is or-
is not operative since the adoption of the constitution of 1877,
except in cases where cash is sought to be exempted as against a
debt contracted prior to this constitution (see *Jones* v. *Ehrlisch,.*
65 *Ga.* 546), we do not deem it necessary to now inquire. We
only allude to it because of the effect upon the present case
which was given to it by the court below. The judge held that
this law was of full force and effect when the ordinary, in 1879,
passed upon Johnson's application to supplement the exemption
which he had obtained under the constitution of 1868. And,
although he was of opinion that Johnson's interest in the judg-
ment could be and was exempted, considering that the proceeds.
of this interest must necessarily be cash, he held that, as the
ordinary directed that these proceeds should be invested in real
estate, such real estate did not become homestead property,
but that these proceeds being homestead funds, and being
traced into the land, could be recovered as against parties.
taking with notice that they had been so invested. As we have
intimated, the judge started right, in holding that a valid ex-
emption was obtained in the interest which Johnson owned in
the Shropshire & Co. judgment; for granting that the provisions
which we have quoted from the act of 1870 and section 2841 of
the Civil Code have lost nothing of their original force,.
they can not apply to a judgment, or to any definite interest

therein which is sought to be set apart as a homestead exemption. A judgment is by no means cash, as many an owner of such property, after exhausting every resource at his command to convert it into cash, has sadly realized. A chose in action may be set apart as homestead property. *Leggett & Co.* v. *Van Horn,* 76 *Ga.* 795. We think, however, the judge ended wrong. The homestead character having attached to the interest in the judgment, when this interest was converted into cash, the cash, being the proceeds of homestead property, was itself exempt, and when this cash was invested in land the land became exempt. It does not make any difference, so far as the defendant in error is concerned, whether the ordinary did or did not have authority to direct that the proceeds of Johnson's interest in the judgment should be invested in real estate; for if such direction was illegal, he was not hurt. If Johnson, himself, without any order from the ordinary, had invested the homestead funds in land, the land would have become homestead property, as against Johnson's creditors. In *Morris* v. *Tennent,* 56 *Ga.* 577, it was held that, "When exempted personalty has been exchanged, whether legally or not, for property of like kind, the latter stands, as against the husband's creditors, in place of the former, so long as the exchange is not repudiated by the parties at interest." To the same effect, see *Murray* v. *Sells,* 53 *Ga.* 257; *Cheney* v. *Rodgers,* 54 *Ga.* 168, s. c. 59 *Ga.* 861; *Dodd* v. *Thompson,* 63 *Ga.* 393; *Mitchell* v. *Prater,* 78 *Ga.* 767; *Broome* v. *Davis,* 87 *Ga.* 584.

It may be observed that in all of the above-cited cases the exchange was for, or the reinvestment was in, property of the same general class as that which had been set apart as homestead property, and that in this case from which we have just quoted this fact is made prominent in the decision of the court. But we apprehend that in the decisions where such qualifying expressions as "property of like kind," etc., appear, their presence is to be accounted for because the homesteads dealt with were obtained under the constitution of 1868, which, while allowing a total exemption of $3,000, limited the exemption of realty to $2,000 and the exemption of personalty to $1,000. Under the constitution of 1877 no such separation of, or distinction between,

the two classes of property is made, but the entire amount of the exemption authorized therein may be set apart in realty, in personalty, or in realty and personalty.    So that now, if homestead property of the one class is exchanged for, or sold and its proceeds invested in, property of the other class, the homestead character, so far as persons not injured thereby are concerned, will attach to the property acquired by the exchange or the reinvestment.    The principle now applicable is stated by Chief Justice Bleckley, in *Broome* v. *Davis,* supra, where he says: "It is settled law that property paid for in full with other property previously set apart in due and proper manner under the homestead and exemption laws, takes the place of the latter, and is impressed with the homestead character."

2.  Though the deed to the land was made to Johnson's wife and children, instead of to the head of the family, this fact did not prevent the land from becoming exempt as homestead property.    Supra, *Murray* v. *Sells; Cheney* v. *Rodgers; Mitchell* v. *Prater; Broome* v. *Davis.*    And certainly no one chargeable with notice of the homestead character of the land, who purchased or took a lien upon it, could acquire any right which would defeat the homestead interest.    Besides, in the present case, the mortgagees did not take their mortgage from the grantees named in the deed, but from the husband and father of those grantees.    In this deed the following language was written, just after the description of the property therein conveyed: " The purchase-money being homestead money, and the same invested in the above-described property, under and by an order of the court of ordinary of said county, as the homestead of Mrs. Jane E. Johnson and her minor children above named, and such as may hereafter be born to George A. and the said Jane E. Johnson, his wife, in pursuance of the homestead laws of said State." This recital was certainly sufficient to put the mortgagees upon notice of the homestead character that was impressed upon the land.    For one of them was a daughter of George A. and Jane E. Johnson, and the other was the surviving husband and sole heir of another daughter of theirs, both of which daughters were named as grantees in the deed; and each of the suits which Johnson settled, by giving the notes and the mortgage to secure

them, was based upon the interest which the plaintiff in such suit claimed in the land under and by virtue of this very deed. Claiming under the deed, they were most assuredly chargeable with notice of its contents. Notice to these mortgagees was, in law, notice to each transferee of the notes and mortgage.

3. There is a question involved in this case, although not made in the court below, nor discussed in the argument here, and that is, whether a homestead or exemption obtained under the constitution of 1868, which was not of as much value as the homestead allowed by the constitution of 1877, could be supplemented after the latter constitution went into effect. We deem it important to determine this question, because, at first blush, there seems to be a conflict, on this point, between the decisions in *Mitchell* v. *Wolfe, 70 Ga.* 625, and *First National Bank of Chattanooga* v. *Massengill, 80 Ga.* 333. We are clearly of opinion that, after the constitution of 1877 and the act passed for the purpose of carrying into effect its homestead provisions became operative, such a homestead could be supplemented until the amount covered by the exemption reached the limit allowed by the new constitution. The headnotes to the case in the 70th *Georgia* were not made by the court, but by the reporter, who is now the able judge who tried the present case. It must be admitted that there is much in what Justice Hall said in that case which, considered in the abstract, without reference to the real issue involved, which was made by the objection interposed by the creditor of the applicant for the supplemental exemption, seems to authorize the main headnote thereto. But it is apparent that the real question before the court and decided in that case was, whether a homestead or exemption obtained under the constitution of 1868 could be supplemented after the present constitution went into effect, as against an objecting creditor of the applicant whose rights, as a creditor, had become vested before the later constitution was adopted. The broader question, whether such a homestead could be, under any circumstances, supplemented after the present constitution became operative, was not necessarily involved in the case. The decision in that case, when applied to the facts upon which it was predicated, is clearly right. The question in the case in the 80th *Georgia*

was, whether one who had procured a homestead while the constitution of 1868 was in force could, after that constitution was superseded by the present one, obtain an entirely new and independent homestead under the provisions of the later constitution. It was held that he could not have a new homestead set apart. But the court pointed out that the proper course to be pursued in such a case, where the homestead obtained under the constitution of 1868 was less in value than that allowed by the constitution of 1877, was to supplement the existing homestead.

*Judgment reversed. All concurring, except Cobb, J., absent.*