CONTINENTAL CASUALTY CO. *v.* WHITE, admx., *et al.*

288

*Maddox, Matthews & Owens* and *Rosser & Shaw,* for plaintiff in error.

*Wright & Covington* and *R. Carter Pittman,* contra.

BELL, J. This case was before this court on a previous occasion, when rulings upon the pleadings and the grant of a nonsuit were the matters to be considered. *White* v. *Roper,* 176 *Ga.* 180 (167 S. E. 177). The facts stated in the former report will not be repeated here, but reference thereto will be necessary to an understanding of the present decision. On the trial now under review the court disallowed an amendment to the answer of the surety company, and excluded evidence offered by it. The verdict being in favor of the plaintiff, the surety company moved for a new trial, which the court refused, and the company excepted. The questions for determination are whether the court erred, as alleged in exceptions pendente lite, in disallowing the defendant's amendment, and whether it was erroneous to exclude the evidence the rejection of which is complained of in the motion for a new trial.

By its proffered amendment the surety company alleged, in effect, that because of the conduct of Joe Roberson, one of the two heirs of the estate of Mrs. Grace Williams Roberson, the plaintiff's intestate, the plaintiff should be estopped from asserting any claim to the fund in controversy, so far as such claim would inure to the benefit of Joe Roberson or his estate, he also being now deceased. It was alleged that the defendant administrator acted in good faith in paying the insurance money to the brothers and sister of the deceased soldier, believing that they, and not the widow, who afterwards became the wife of Roberson, were the true and lawful beneficiaries of the war-risk insurance policy; and that Joe Roberson, being fully informed to this effect and being specifically urged, if he held a different opinion, to institute legal proceedings consistently therewith, wholly failed to do so until after the funds had been distributed to the brothers and sister and the defendant administrator had been finally discharged.

It is contended that the suit was necessarily instituted for the benefit of Joe Roberson and his minor child as the only heirs of Mrs. Grace Williams Roberson, and that since Joe Roberson had full knowledge of each step in the administration upon the soldier's estate, including the application for discharge, and neglected to file any objection or protest, though directly invited to do so, the recovery, if any, should be limited to the right of the minor child, excluding by estoppel any sum which might otherwise have been recovered for the benefit of Joe Roberson. It was not alleged that Roberson ever did any affirmative act or made any statement or representation by which the defendant administrator was misled or caused to take a different position. Nor does it appear that the inaction of Roberson was not due to ignorance of his own rights, or that his own attitude was not characterized by good faith. The defendant administrator was appointed and discharged within a period of less than twelve months, during which time there was no representation upon the estate of Mrs. Grace Williams Roberson.

The court did not err in disallowing the amendment in which it was attempted to invoke the principle of estoppel. In *Davis* v. *Bagley,* 40 *Ga.* 181, the administrator Bagley distributed a portion of an estate to one not entitled thereto. Mrs. Davis, the person entitled, consented to the distribution under a mistake of law, but did nothing to mislead the administrator who was not at all influenced in his action by her consent. Mrs. Davis later brought suit against the administrator and his sureties; and upon the question of estoppel this court said: "This is not the case of a contract where both parties stand upon their own judgment, and where no special duty is cast upon either. Bagley is a trustee, an officer appointed by the law to perform a specified duty, to wit: to administer this estate according to law; and the rules prescribing his duty are the law of the land. He had a duty to perform. If he failed, however ignorant or mistaken he may be, he can not excuse himself. He has a mere ministerial duty to perform in *paying out* this estate, and if he pay any portion of it to one not entitled, he is responsible to those entitled. Mrs. Davis had no *duty* in the premises. She was under no *obligation* to keep Bagley informed as to the law; and her failure to instruct him as to his duties is no breach of any duty on her part. There is no pretense of any fraud or concealment by her. Indeed, it appears affirmatively from the

record that Bagley acted wholly without reference to any act or saying of hers. She, it is true, stood by and said nothing, made no objection, simply because she did not know she had any right to object. Bagley was not *misled* by her. That is affirmatively proven. We do not think she is estopped. Estoppel always implies that the person estopped has, by his act, misled the other. . . It was not Mrs. Davis's duty to instruct Bagley as to the law. It was Bagley's duty to obey the law. He was the actor, sworn and bonded, authorized to take counsel and charge the estate for it; and we can see no reason for excusing him from the performance of his duty because Mrs. Davis, who was not bound to set him right, stood by and, in her own ignorance, permitted him to go wrong." In *Lawless* v. *Orr,* 122 *Ga.* 276 (50 S. E. 85), it was said: "The failure to file a claim to property which has been levied on will not estop the true owner from asserting his title by an action of trover against the purchaser at the sale under the execution, such owner having done nothing that had a tendency to mislead the purchaser as to the owner's relation to the property and the title." In *Hartz* v. *Hartz,* 144 *Ga.* 98 (86 S. E. 220), it was held that "mere silence by one who stands by and see another make a gift to a third person of a chattel in which he has an interest will not alone estop him from asserting his title against the donee."

In *Peyton* v. *Stephens,* 130 *Ga.* 338 (60 S. E. 563, 124 Am. St. R. 170), one Schurter was entitled to a share of the estate of one Stephens. After disclaiming any interest therein, he sold his entire interest to another, who sued for a partition. This court held: "A distributee of an estate, who, in ignorance of his interest in the lands thereof, disclaims to the other distributees any interest therein, whereupon the latter divide such lands among themselves, is not thereby estopped from afterwards asserting against them title to his interest, where such other distributees had convenient means of acquiring knowledge of the title, and had equal knowledge, or equal means with such distributee of obtaining the truth about the title, and such distributee was not guilty of such negligence as misled the other distributees to their injury." In the opinion it was said: "Was there such gross negligence by Schurter as to amount to fraud by which another was misled to his injury? Was Schurter guilty of any gross negligence amounting to constructive fraud? Suppose he was, this fact alone would not estop him. In

order to estop him, the party asserting the estoppel must have been misled by such negligence to his injury. As far as shown by the record, the remaining heirs were not injured, and if misled, they were misled to their benefit by taking Schurter's interest in the land. If deceived at all, they certainly were not misled to their injury when the deception resulted in their getting one more share of land to divide than they were entitled to and got that share from the party misleading them." In *Bank of Lumpkin* v. *Bank of Stewart County,* 20 *Ga. App.* 1 (2) (92 S. E. 778), it was said: "Estoppels are not favored, and mere silence will not work an estoppel unless the circumstances are such as not only to afford an opportunity to speak, but also to create an apparent or actual duty to speak. It is not the office of estoppel to work a positive gain to another. Its exclusive office is to protect him from injury which, but for the doctrine, he must necessarily suffer. Hence, he who invokes an estoppel must have changed his position, to his injury, upon the strength of the facts upon which the claim of estoppel is based." See also *McNabb* v. *Houser,* 171 *Ga.* 744 (3) (156 S. E. 595, 74 A. L. R. 1122); *Lynch* v. *Poole,* 138 *Ga.* 303, 304 (75 S. E. 158); *Johnson* v. *Thomason,* 120 *Ga.* 531, 535 (48 S. E. 137); *Tinsley* v. *Rice,* 105 *Ga.* 285, 290 (31 S. E. 174); *Rusk* v. *Hill,* 117 *Ga.* 722 (8) (45 S. E. 42); *Cuthbert Ice Co.* v. *York Mfg. Co.,* 20 *Ga. App.* 695 (3) (93 S. E. 279).

The conclusion that the amendment here failed to allege a sufficient basis for an estoppel is not altered by the fact that the fund represented the proceeds of a war-risk insurance policy. This fund was inherited by the widow of the insured in as full and complete a manner as she might have inherited any other property of her deceased husband, and upon the death of Mrs. Roberson the right to the fund descended to her husband and child as her own heirs at law. Accordingly, there is no reason why the ordinary rules on the question of estoppel should not be applied. Singleton *v.* Cheek, 284 U. S. 493 (52 Sup. Ct. 257); Trotter *v.* Tennessee, — U. S. — (78 L. ed.). It follows that the court did not err in excluding the testimony offered for the purpose of showing an estoppel.

■ Nor was evidence that Joe Roberson was fully acquainted with all the facts touching the administration of the estate of the deceased soldier admissible for the purpose of rebutting the charge that the letters of dismission were obtained by the practice of a

fraud upon the estate of the soldier's widow and sole heir at law, called in this record Mrs. Grace Williams Roberson. If Mrs. Roberson had remained in life, knowledge of the facts by her as the heir at law directly interested might have been relevant upon the question of fraud, but she had died some time before the administration upon the estate of her soldier husband, and her estate was not at all represented during the period of this administration. Joe Roberson was not appointed as administrator of her estate until shortly after the discharge of the defendant administrator, and in the meantime he was not authorized to act or receive notice for the estate of Mrs. Roberson, nor was there any other person who could do so. *Brown* v. *Mutual Life Ins. Co.,* 146 *Ga.* 123 (90 S. E. 856) ; *Hill* v. *Maffett, 3 Ga. App.* 89 (59 S. E. 325). In the circumstances the distribution of the soldier's estate to persons not entitled, and the obtaining of a discharge upon representations that these persons were the true and only heirs at law, constituted a fraud in law against the unrepresented estate of Mrs. Roberson, that is, upon the sole heir at law of the defendant's intestate. *Poullain* v. *Poullain,* 79 *Ga.* 11 (6) (4 S. E. 81) ; *While* v. *Roper,* 176 *Ga.* 180 (3), 188 (167 S. E. 177) ; 34 C. J. 471. The court did not err in rejecting the evidence that Joe Roberson was fully acquainted with the claims and contentions of the defendant administrator, including the pendency of the application for discharge.

■ It is further contended that the court erred in excluding evidence that the ordinary was personally acquainted with the family relationships, and knew that Mrs. Grace Williams, later Mrs. Roberson, was the widow and sole heir at law of the deceased soldier; this evidence having been offered for the purpose of showing that the ordinary could not have been deceived or misled by the representations as to others being the heirs at law. There is no merit in this contention. The ordinary, sworn as a witness in this case, testified as follows : "At the time the order of discharge was granted, no evidence was submitted to me other than the final return, nothing but the return sworn to was all, and that was the only evidence submitted to me in connection with it. I accepted the statements in that return as being true; of course the receipts of the administrator was all, I will say; and I accepted that as being true. Also the statements in the application for discharge, I accepted those as being true likewise, and acted on that." As a

matter of law, the evidence and the only evidence upon which the ordinary acted was untrue, and constituted the sole producing cause of the judgment. Thus it was clearly apparent that a fraud was committed on that officer. It matters not that the ordinary may have had private knowledge that the truth was otherwise. He could not have acted upon personal information, and the administrator who wrongfully applied for and obtained the discharge can not say that he should have done so. *Fox* v. *State*, 9 *Ga.* 373 (2); *Cramer* v. *Truitt*, 113 *Ga.* 967 (39 S. E. 459); *Atlantic & Birmingham Ry. Co.* v. *Cordele*, 125 *Ga.* 373 (4) (54 S. E. 155); 3 C. J. 61. As to the administrator and his surety, the judgment could be declared fraudulent in a proper proceeding with proper parties.

The verdict for the plaintiff was directed by the trial judge, but there was no exception to this ruling. The verdict is amply supported by the evidence, and no error of law appears to have been committed. The motion to assess damages against the plaintiff in error, however, is denied. See *Roper* v. *White*, 178 *Ga.*

*Judgment affirmed. All the Justices concur.*